DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )      Criminal No. 2010-53
                               )
        v.                     )
                               )
SAKER M. SHALHOUT a/k/a SAKER  )
ZHALHOUT, JAD M. SHALHOUT      )
            Defendants.        )
_____)

ATTORNEYS:

**Everard E. Potter**
**St. Thomas, U.S.V.I.**
      *For the plaintiff.*

**Kim L. Chisholm**
**St. Thomas, U.S.V.I.**
      *For the plaintiff.*

**Arturo R. Watlington, JR**
**St. Thomas, U.S.V.I.**
      *For the defendant Jad M. Shalhout*

**Joseph J. Mingolla, II**
**St. Thomas, U.S.V.I.**
      *For the defendant Jad M. Shalhout.*

**Treston E. Moore**
**St. Thomas, U.S.V.I.**
      *For the defendant Saker M. Shalhout.*

**Gordon C. Rhea**
**Mount Pleasant, S.C.**
      *For the defendant Jad M. Shalhout.*

## <u>MEMORANDUM OPINION</u>

GÓMEZ, C.J.

      Before the Court is Jad Shalhout and Saker Shalhout's
motion for a new trial.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On October 7, 2010 the Grand Jury returned an indictment against Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad. Thereafter, on January 13, 2011, the Grand Jury handed down a superseding indictment against the defendants. Count one charged Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad, with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 and 1349. Counts two through forty-three charged Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad with wire fraud in violation of Title 18 U.S.C. § 1343. Count forty-four charged Jad Shalhout, Saker Shalhout, and Mohannad Abdel-Samad with conspiracy to money launder. Counts forty-eight and forty nine charged Jad Shalhout with money laundering in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i). Mohannad Abdel-Samad entered a guilty plea on February 25, 2011.

The trial of this matter was held from March 28, 2011 to March 31, 2011. The government presented testimony from several witnesses: Denise Johannes Luis Garcia Rojas, Maria Marino, Carlos Cruz, Silva Gibbs, Edris Pant-James, Paul Smith, Michael Thompson, Frederica Graneau, Marcella Somersal, Munif Asfour, Mohannad Abdel Samad, Hugh Brown, Kendy Javier, Jamil Daboub, and John Feola. Among them were two cooperating witnesses

Mohannad Abdel-Samad and Jamil Daboub. Defendant, Jad Shalhout

presented the testimony of George Ward, Kimberly Abhary, and

Carolina Hussein. Jad Shalhout testified on his own behalf.

Defendant, Saker Shalhout offered the testimony of Mohammed

Hussein, and Ronald Belfon. Saker Shalhout testified on his own

behalf. On March 31, 2011, Jad Shalhout was convicted on one

count of conspiracy to commit wire fraud and two counts of money

laundering. Saker Shalhout was convicted on one count of

conspiracy to commit wire fraud and on forty-two counts of wire

fraud.

Shortly after the conclusion of the trial, Jad Shalhout's

attorney, Arturo Watlington, communicated with an alternate

juror who did not take part in deliberations. Thereafter, Jad

Shalhout and Saker Shalhout presented a sworn affidavit from the

alternate juror to the Court. In the affidavit, the alternate

juror stated that during Jad Shalhout and Saker Shalhout's

trial, members of the jury panel "asserted that defendants where

[sic] in guilty because they were of Arabic descent or as we

call them hear [sic] in St. Thomas, 'Arabs.'" (Def. Mot. to

Interview Jurors Ex. 1). The alternate juror further averred

that "[g]iven what I perceived to be preconceived negative

opinions of some of the jurors who sat in the trial of the

above-captioned matter the defendants could not have gotten a fair trial." (Def. Mot. to Interview Jurors Ex. 1).

Jad Shalhout then moved to interview members of the jury "to determine the extent of the panel's prejudice against persons of Arab heritage and Muslim belief." (Def. Mot. to Interview Jurors at 2-3). In September 2011, the Court granted Jad Shalhout and Saker Shalhout leave to interview jury members for the limited purpose of exploring bias against Arabs. The Court also granted Jad Shalhout and Saker Shalhout's motion for juror addresses. Jad Shalhout and Saker Shalhout successfully interviewed three jurors.

Jad Shalhout and Saker Shalhout (collectively the "Shalhouts") now move for a new trial. The Government opposes.

## II. DISCUSSION

Pursuant to Fed. R. Crim. P. 33 ("Rule 33"), the Court may grant a new trial "in the interest of justice." *United States v. Charles*, 949 F. Supp. 365, 368, 35 V.I. 306 (D.V.I. 1996). In assessing such "interest", the court may weigh the evidence and credibility of witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990). If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id.* "The burden is on the defendant to show that a new trial ought to be granted. Any

error of sufficient magnitude to require reversal on appeal is

an adequate ground for granting a new trial." *United States v.*

*Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5

(D.V.I. Feb. 12, 1996).

## III. <u>ANALYSIS</u>

The Shalhouts argue that this Court should grant them a new

trial for two reasons.  First they assert that they were

convicted before a racially and religiously biased jury.  As

such, they claim their convictions were obtained in violation of

their right to a fair trial under the Fifth and Sixth

Amendments.  Second, they argue that the Court improperly

excluded an exculpatory writing from an alleged co-conspirator

acknowledging a debt owed to Jad Shalhout.

### A. **Sixth Amendment Right to an Impartial Jury**

#### a. **Motion for a New Trial Based on the Court's Voir Dire**

The Shalhouts contend that the Court's refusal to voir dire

potential jurors regarding bias against Arabs and Muslims

resulted in a tainted jury.  On this basis, they argue that the

Court should grant them a new trial.

In *Rosales-Lopez v. United States*, 451 U.S. 182 (1981), the

Supreme Court assessed whether the district court erred when it

declined to voir dire the jury for racial and ethnic bias.  In

*Rosales-Lopez* the defendant Humberto Rosales-Lopez ("Rosales-

Lopez") was tried for his participation in a plan to bring three

Mexican aliens into the United States. Rosales-Lopez was of

Mexican descent. Before trial, counsel for Rosales-Lopez

submitted questions for voir dire. Among the questions

submitted was "Would you consider the race or Mexican descent of

Humberto Rosales-Lopez in you evaluation of this case? How

would it affect you?" The trial court declined to ask the

questions. *Rosales-Lopez*, 451 U.S. at 185.

In its analysis of the case, the Supreme Court emphasized

that "[o]nly when there are more substantial indications of the

likelihood of racial or ethnic prejudice affecting the jurors. .

. does the trial court's denial of a defendant's request to

examine the jurors' ability to deal impartially with this

subject amount to an unconstitutional abuse of discretion."

*Rosales-Lopez*, 451 U.S. at 190; *see also Turner v. Murray*, 476

U.S. 28, 36 (1986) ("We hold that a capital defendant accused of

an interracial crime is entitled to have prospective jurors

informed of the race of the victim and questioned on the issue

of racial bias.").

More specifically, the *Rosales-Lopez* Court stated that

previous Supreme Court cases, *Aldrige v. United States*, 283 U.S.

308 (1931) and *Ristaino v. Ross*, 424 U.S. 589 (1976), "fairly

imply that federal trial courts must make such an inquiry when
requested by a defendant accused of a violent crime and where
the defendant and the victim are members of different racial or
ethnic groups." *Rosales-Lopez*, 451 U.S. at 192.

The Supreme Court added that "[t]here may be other
circumstances that suggest the need for such an inquiry, but the
decision as to whether the total circumstances suggest a
reasonable possibility that racial or ethnic prejudice will
affect the jury remains primarily with the trial court, subject
to case-by-case review by the appellate courts." *Rosales-Lopez*,
451 U.S. at 192.

The Supreme Court held that Rosales-Lopez's case did not
involve a violent criminal act with a victim of a different
racial or ethnic group. Because Rosales-Lopez's crime did not
fit this category, the Supreme Court examined whether or not his
case fell "within that category of cases in which the trial
court must determine if the external circumstances of the case
indicate a reasonable possibility that racial or ethnic
prejudice will influence the jury's evaluation of the evidence."
*Rosales-Lopez*, 451 U.S. at 193; *see, e.g.*, *Ham v. South
Carolina*, 409 U.S. 524 (1973) (reversing trial court's decision
because trial judge failed to interrogate jurors on racial
prejudice where a black civil rights activist was on trial and

his defense to a marijuana possession charge was that he had

been framed by local white police).

The Supreme Court reasoned that there was no reasonable

possibility of ethnic prejudice because, the trial court

questioned prospective jurors as to their attitudes towards

aliens. The Supreme Court further opined that "[t]here can be no

doubt that the jurors would have understood a question about

aliens to at least include Mexican Aliens." *Id.* Based on this

question, the trial court removed two jurors. The Supreme Court

concluded that "[r]emoving these jurors eliminated, we believe,

any reasonable possibility that the remaining jurors would be

influenced by an undisclosed racial prejudice." *Id.*

Federal Rule of Criminal Procedure 24(a) grants trial

judges the authority to conduct voir dire. "Because the

obligation to impanel an impartial jury lies in the first

instance with the trial judge, and because he must rely largely

on his immediate perceptions, federal judges have been accorded

ample discretion in determining how best to conduct the *voir*

*dire*." *Rosales-Lopez*, 451 U.S. at 189.

The Shalhouts object to the Court's voir dire because the

Court declined to question the jury about racial bias against

Arabs and Muslims. The Shalhouts were charged in 2010 with

conspiracy to commit wire fraud, wire fraud, conspiracy to

commit money laundering, and money laundering. Indeed, similar

to the crime of smuggling aliens in *Rosales-Lopez*, these crimes

are not violent crimes.

Moreover, there was no evidence of racial or ethnic issues

"inextricably bound up with the conduct of the trial." *See*

*Ristaino v. Ross*, 424 U.S. 589, 597 (1976).

Further, the only argument the defense put forth at trial

in favor of having these questions asked at voir dire was that

Jad Shalhout and Saker Shalhout "were concerned about the fact

of their race and origins and the fact that they were from the

Arabic part of our family tree and that some of our witnesses

might have religions of the Muslim faith, just to probe to find

out if there's anybody that had a strong sentiment for or

against any of our clients for just that reason." (Tr. Day 1,

65:15-66:21).

Courts have held that a defendant's heritage does not in

and of itself establish a constitutional right to question

prospective jurors regarding prejudice. *See, e.g., United*

*States v. Ramos*, 238 Fed. App'x 329, 330 (9th Cir. 2007)

("Because Ramos's Mexican heritage, in and of itself, did not

trigger a right to question prospective jurors concerning

prejudice against Mexican-Americans . . . the district court did

not abuse its discretion when it disallowed the proposed voir

dire."); *United States v. Borders*, 270 F.3d 1180, 1183 (8th Cir.

2001) (holding there was no constitutional presumption of juror

bias where counsel asked the district court to make an inquiry

into potential prejudice because the defendant was black and the

prospective jurors were white).

Significantly, the crimes at issue in this case did not

involve racial or religious issues.  To voir dire on the subject

out of context would inject an issue not germane to the trial.

Indeed, considering the totality of the circumstances there is

no record evidence that suggests a "reasonable possibility" that

racial or ethnic prejudice would affect the jury.

### b. Juror Bias

The Shalhouts argue that their interviews with jurors

demonstrate that jurors were exposed to extraneous information--

a Fed. R. Evid. 606(b) ("Rule 606(b)") exception.  They further

argue that because the juror interviews demonstrate the jury was

"infected" with racial prejudice this resulted in substantial

prejudice to the defendants.  On this basis they contend the

Court should grant them a new trial.

Rule 606(b) states,

(b) Inquiry into validity of verdict or indictment. Upon an
inquiry into the validity of a verdict or indictment, a
juror may not testify as to any matter or statement
occurring during the course of the jury's deliberations or
to the effect of anything upon that or any other juror's

> mind or emotions as influencing the juror to assent to or
> dissent from the verdict or indictment or concerning the
> juror's mental processes in connection therewith. But a
> juror may testify about (1) whether extraneous prejudicial
> information was improperly brought to the jury's attention,
> (2) whether any outside influence was improperly brought to
> bear upon any juror, or (3) whether there was a mistake in
> entering the verdict onto the verdict form. A juror's
> affidavit or evidence of any statement by the juror may not
> be received on a matter about which the juror would be
> precluded from testifying.

Fed. R. Evid. 606(b).

"A new trial is warranted if the defendant likely suffered 'substantial prejudice' as a result of the jury's exposure to the extraneous information." *United States v. Urban*, 404 F.3d 754, 777 (3d Cir. 2005). "In examining for prejudice, [a court] must conduct an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror." *Id.* (citing *United States v. Lloyd*, 269 F.3d 228, 238 (2001)). Yet, the "court may inquire only into the existence of extraneous information" and not "into the subjective effect of such information on the particular jurors." *Wilson v. Vermont Castings Inc.*, 170 F.3d 391, 394 (3d Cir. 1999). "If there is reason to believe that jurors have been exposed to prejudicial information, the trial judge is obliged to investigate the effect of that exposure on the outcome of the trial." *United States v. Console*, 13 F.3d 641, 669 (3d Cir. 1993).

In *Tanner v. United States*, 483 U.S. 107 (1987), the
Supreme Court addressed whether or not the petitioners William
Conover ("Conover") and Anthony Tanner ("Tanner") were entitled
to an evidentiary hearing, including juror testimony, on juror
alcohol and drug use during trial under Rule 606(b) and the
Sixth Amendment.

Conover and Tanner were convicted of conspiring to defraud
the United States and committing mail fraud. The day before
Conover and Tanner were sentenced Tanner filed a motion seeking
a continuance of the sentencing date, permission to interview
jurors, an evidentiary hearing, and a new trial. Accompanying
these motions was an affidavit from Tanner's attorney stating
that he had received an unsolicited telephone call from a trial
juror. The juror informed Tanner's attorney that several of the
jurors consumed alcohol during the lunch breaks during trial.
*Tanner*, 483 U.S. at 112-13.

Ultimately, the District Court concluded that juror
testimony on intoxication was inadmissible under Fed. R. Evid.
606(b) to impeach the jury's verdict.

On appeal, Conover and Tanner argued that the District
Court should have considered juror testimony regarding drug and
alcohol use during trial. Conover and Tanner asserted that such

testimony is not barred by the Fed. R. Evid. 606(b) and is

compelled by the Sixth Amendment.

In analyzing whether or not Rule 606(b) permitted juror

testimony in this case, the Supreme Court noted that substantial

policy considerations support the common-law rule against the

admission of jury testimony to impeach a verdict. Quoting

*McDonald v. Pless*, 238 U.S. 264 (1915), the Supreme Court

emphasized the necessity of protecting the privacy of jury

deliberations,

> [L]et it once be established that verdicts solemnly made
> and publicly returned into court  can be attacked and set
> aside on the testimony of those who took part in their
> publication and all verdicts could be, and many would be,
> followed by an inquiry in the hope of discovering something
> which might invalidate the finding.  Jurors would be
> harassed and beset by the defeated party in an effort to
> secure form them evidence of facts which might establish
> misconduct sufficient to set aside a verdict. . . .

*Tanner v. United States*, 483 U.S. at 119-20 (quoting *McDonald v.*

*Pless*, 238 U.S. 264, 267-268 (1987)).

Citing to various congressional statements regarding Rule

606(b), the Supreme Court further explained when juror testimony

is permissible under Rule 606(b),

> 'As proposed by the Court, Rule 606(b) limited testimony by
> a juror in the course of an inquiry into the validity of a
> verdict or indictment.  He could testify as to the
> influence of extraneous prejudicial information brought to
> the jury's attention (e.g. a radio newscast or newspaper
> account) or an outside influence which improperly had been
> brought to bear upon a juror (e.g. a threat to the safety

of a member of his family), but he could not testify as to
other irregularities which occurred in the jury room.
Under this formulation a quotient verdict could not be
attacked through the testimony of juror [sic], *nor could a
juror testify to the drunken condition of a fellow juror
which so disabled him that he could not participate in the
jury's deliberations.*'

*Tanner v. United States*, 483 U.S. at 121 (emphasis supplied).

The Supreme Court concluded that the legislative history of

606(b) did not allow jurors to testify on juror conduct during

deliberations, including juror intoxication.

In *Government of the Virgin Island v. Gereau*, 523 F.2d 140,

150 (3d Cir. 1975) the Third Circuit delineated several

circumstances that would fall under the Rule 606(b) exception

for "extraneous prejudicial information," including "(1)

exposure of [the] jury to new items about the matter pending

before the jury; (2) consideration by the jury of extra-record

facts about the case; (3) communications between third parties

and jurors [that are] relevant to the case [under

consideration]; [and] (4) pressures or partiality on the part of

the court." *Id*. at 150.  The Third Circuit also explained that

"evidence of discussions among jurors, intimidation or

harassment of one juror by another, and other intrajury

influences on the verdict is within the rule, rather than the

exception, and is not competent evidence to impeach a verdict."

*Id*.

In *United States v. Benally*, 546 F.3d 1230 (10th Cir.
2008), the Tenth Circuit evaluated whether Kerry Benally
("Benally") had a right to a new trial because of racially
charged comments made during jury deliberations.  Shortly after
Benally was convicted, a juror approached the defense counsel
stating that the jury deliberation had been influenced by racist
claims about Native Americans.  According to the juror the
foreman told other jurors that "'[w]hen Indians get alcohol,
they all get drunk,' and that when they get drunk they get
violent." *Id.* at 1231. On a different occasion some jurors
discussed the need to "send a message back to the reservation."
*Benally*, 546 F.3d at 1231.  The juror signed an affidavit
attesting to both of these discussions.

Based on these statements, Benally moved for a new trial.
"He argued that the jurors had lied about their racial bias on
voir dire and had improperly considered information not in
evidence." *Id.* at 1232. The District Court admitted the juror
testimony and granted Benally a new trial.  The government
appealed.

On appeal, the Tenth Circuit reinstated the conviction.  In
doing so, the Tenth Circuit held that Rule 606(b)'s prohibition
covers juror testimony of racial bias in jury deliberation, and

that the Sixth Amendment does not require an exception to this

rule.

On appeal, Benally argued that the juror statements were

"extraneous prejudicial information" or an "outside influence,"

falling under the first or second exception of Rule 606(b).  The

Tenth Circuit countered that

> [t]hese exceptions for extraneous influences cover
> misconduct such as jurors reading news reports about the
> case, jurors communicating with third parties, bribes, and
> jury tampering. . . They do not extend to evidence of drug
> and alcohol use during the deliberation. . . If a juror
> were to conduct his own investigations and bring the
> results into the jury room . . . Rule 606(b) would allow
> another juror to expose it.

*Id*. at 1236; *see also United States v. Villar*, 586 F.3d 76 (1st

Cir. 2009)(Rule 606(b) by its terms "precludes any inquiry into

the validity of the verdict based on juror testimony regarding

racial or ethnic comments made 'during the course of

deliberations.'").

Benally further argued that under the circumstances it

would be a violation of his Sixth Amendment right to an

impartial jury if he was not afforded a new trial.  Citing

*Tanner* the Tenth Circuit asserted that "'aspects of the trial

process' . . . serve to protect the defendant's Sixth Amendment

right without breaching the ban on post-verdict juror

testimony." *Id*. at 1240. Specifically, the *Benally* Court noted

that the process of

> [v]oir dire can still uncover racist predilections,
> especially when backed up by the threat of contempt or
> perjury prosecutions. Jurors can report to the judge
> during trial if racist remarks intrude on jury
> deliberations, enabling the judge to declare a mistral or
> take other corrective measures. After the verdict is
> rendered, it could still be impeached if there is evidence
> of juror wrongdoing that does not depend on the testimony
> of fellow jurors in breach of Rule 606(b)....

*Benally*, 546 F.3d at 1240.

Significantly, in *United States v. Richards*, 241 F.3d 335,

(3d Cir. 2001), the Third Circuit refused to grant the defendant

a new trial based solely on intra-jury prejudice. In *Richards*,

Don Richards ("Richards") petitioned for a new trial based on

juror misconduct. Richards filed his motion three months after

the jury reached its verdict. He based his motion on an

affidavit submitted by an alternate juror. The affidavit stated

that during the trial two other jurors, in the presence of other

jurors, commented that Richards was guilty. "The District Court

denied the motion without a hearing because disposition of the

motion would require an inquiry into jury deliberations

prohibited by Fed. R. Evid. 606(b)." *Richards*, 241 F.3d at 339-

40.

The Third Circuit affirmed the District Court decision. In

affirming the District Court's decision, the *Richards* Court

stated that a motion for a new trial based on Fed. R. Crim. P.

33 requires a defendant establish two elements: 1) that the

evidence is newly discovered; and 2) that the defendant's

failure to discern the information during the trial was not a

result of lack of diligence.  *Richards*, 241 F.3d at 343.

Applying the Rule 33 elements, the Third Circuit noted that

the affidavit was not presented to the Court until three months

after the trial ended.  Specifically, the Third Circuit stated

that

> [w]hile the defense asserts that [the juror] did not alert
> the defense before that time, that does not suffice to
> cloak the information as 'newly discovered.'  If the juror
> had come forward prior to deliberation, the District Court
> could have held a hearing on the possible presence of
> improper intra-jury prejudice.  Evaluating evidence of
> misconduct occurring three months after the fact, however,
> would require the District Court to interview the jurors in
> contravention of Rule 606(b).  Although the statements by
> the jurors occurred prior to deliberation, the jurors would
> necessarily be queried as to their thought process to
> determine whether or not the premature statements affected
> their verdict.  Therefore, inquiry as to the statements of
> these jurors would be prohibited under the rule.  It was
> not an abuse of discretion in the District Court's failure
> to grant a new trial based on this allegation of intra-jury
> influence.

*Richards*, 241 F.3d at 343-44.

Here, the Shalhouts successfully interviewed three jurors

post-trial.  The first juror they interviewed was an alternate

juror.

The alternate juror indicated that she overheard statements of racial prejudice from other jurors. She testified that on the second day of trial, she heard expressions from at least one juror that the defendants were "already guilty . . . and you know how everybody – how everybody feels about Arabs. They're thieves and they're liars." (Def. Second Supp. Mem. Ex. 1). She stated that these statements were made before other jurors. She also noted that no jurors objected or voiced disagreement to the prejudicial beliefs.

Thereafter, the Shalhouts conducted interviews of two deliberating jurors. The first deliberating juror submitted an affidavit confirming the statements of the alternate juror.

The second deliberating juror stated that she did not hear the statements that "all Arabs are liars and thieves."

Here, as in *Richards*, the information regarding juror misconduct was available during trial. Like *Richards*, the alternate juror's affidavit and information from the deliberating jurors, was not presented to this Court until several months after the trial ended.

Indeed, as stated in *Richards*, the Court's consideration of juror statements prior to deliberation would contravene Rule 606(b). Contrary to the Shalhout's assertions, racially charged statements are not excepted "extraneous prejudicial information"

or "outside influence" under Rule 606 (b).[1]  Significantly, the

Shalhouts fail to provide any evidence of outside influences

like juror communications with third parties or exposure of the

jury to extrajudicial information.  As such, the Court cannot

pierce the Rule 606(b) shield and consider the juror interviews.

In support of their motion for a new trial because of jury

bias, the Shalhouts cite to *Heller v. United States*, 785 F.2d

1524 (11th Cir. 1986).  In *Heller*, one day after jury

deliberations began, a juror alerted the court to racially

charged comments made during deliberations.

---

[1]    The Shalhouts cite *United States v. Henley*, 238 F.3d 1111 (9th Cir.
2001) in support of their contention that racist remarks are "extraneous
influences" that constitute an exception to Rule 606(b).  In *Henley*, a juror
made racially charged statements.  At the district level, the appellants
argued that the juror's statements would have had a powerful impact in the
trial because three of the four appellants were African-American and the
prosecution's principal witness was a young white woman who had a sexual
relationship with one of the African-American defendants.  *Id.* at 119.  The
district court held that Rule 606(b) foreclosed investigation into the
juror's remarks.

On appeal, the Ninth Circuit stated,

While we find persuasive those cases that have exempted evidence of
racial prejudice from Rule 606(b)'s juror incompetency doctrine, we
need not decide today whether or to what extent the rule prohibits
juror testimony concerning racist statements made during deliberations
or, as in this case, outside of deliberations but during the course of
the trial.  Where, as here, a juror has been asked direct questions
about racial bias during voir dire, and has sworn that racial bias
would play no part in his deliberations, evidence of that juror's
alleged racial bias is indisputably admissible for the purpose of
determining whether the juror's responses were truthful.

*U.S. v. Henley*, 238 F.3d 1111, 1121 (9th Cir. 2001).

Significantly, the Ninth Circuit's holding reserved for another day
whether or not Rule 606(b)'s exception for extraneous information included
racially charged statements.

Thereafter, the court conducted a voir dire of the jury.
During the voir dire several jurors recounted various racially
charged comments that deliberating jurors had made.

After the judge concluded his voir dire of the jurors he
permitted the jurors to continue deliberations.  Ninety minutes
later, the jury returned a guilty verdict.

On appeal, the Eleventh Circuit held that the trial judge's
voir dire was superficial at best.  The Eleventh Circuit
stated,

> [w]hen confronted with a number of vague statements about
> 'prejudice' amongst the jurymen by several of the jurors,
> rather than probing into what was meant by these
> expressions, the judge simply asked each juror if he or she
> was affected by prejudice. . . . It is inconceivable that
> by merely denying that they would allow their earlier
> prejudiced comments to influence their verdict
> deliberations, the jurors could have thus expunged
> themselves of the pernicious taint of anti-Semitism.  The
> trial judge clearly abused his discretion when he refused
> to declare a mistrial upon learning of the misconduct of
> the jury men.

*Id.* at 1528.

The Court first notes that *Heller* pre-dates *Tanner*.
Further, *Heller* is inapposite because it differs from this case
in time and degree.  *Heller* involved jury misconduct that was
brought to the court's attention before the jury returned a
verdict.  There, the trial judge failed to conduct an adequate
inquiry during the trial.

Here, allegations of jury misconduct came to light after deliberations had concluded. Additionally, the Court was never afforded a timely opportunity to address alleged misconduct during trial.

Moreover, the Shalhouts primarily point to one pre-deliberation comment to support their argument that the jury was infected with racial bias. Even if the Court were to consider the affidavits of the jurors, in contravention of *Tanner* and Rule 606(b)'s constraints, the evidence would not rise to the level articulated in *Heller* to indicate that the jury was infected with racial bias.

## C.  Exclusion of Co-Conspirator Writing

The Shalhouts argue that the Court improperly excluded "potentially exculpatory" evidence at trial. Specifically, they state that the Court excluded an Arabic writing which evidenced a debt owed to Jad Shalhout. The Shalhouts state that the Court admonished them to not mention the Arabic writing in their opening statements.[2] The Shalhouts argue that based on the

---

[2] The Court addressed the issue of the writing at sidebar. Specifically, the Court's instruction specifically provided,

> MS. CHISHOLM: I understand, Your Honor, but this has to do with something that might come up in opening statement. I don't know if the defense intends to, you know, make any comments with respect to the contents of this Arabic writing that we received.
>
> . . .

Court's instruction they reasonably assumed they were not permitted to offer the Arabic writing into evidence. That argument is wanting.

First, the Court offered a cautionary statement reminding counsel that promising evidence during an opening statement may be risky where the item's admissibility is "hotly contested." That is hardly a prohibition on the admissibility of evidence.

Second, there is no record evidence that the Shalhouts sought to introduce the writing at trial. As such, the Court was not even given the opportunity to decide the issue.

Accordingly, there is insufficient evidence to grant a new trial on this basis.

---

MS. CHISHOLM: And I just want to ensure that if it does come up at sidebar and if we have an opportunity to be heard but that it not -- you know, the contents of the statement not be elicited or not be stated during opening.

THE COURT: All right. Well, any contested issue like that, I would urge counsel not to refer to it during opening. So it seems to me that even if there was a reference to it, that counsel would proceed at its own peril if the item were not ultimately included because there couldn't be any argument on it if there was some inadmissibility problem that the Court found. But I would urge counsel not to refer to that. That's obviously one thing that is hotly contested, and I know Attorney Moore has been before this Court before. I don't expect that he will do that in any event.

MR. MOORE: No, your Honor.

THE COURT: Is that correct, Attorney Moore?

MR. MOORE: Your Honor, that is correct. And we have no intention of bringing it up in opening statement.

(Tr. Day 1, 66:13-67:22).

## IV. CONCLUSION

For the reasons explained above, this Court will deny Jad

Shalhout and Saker Shalhout's motion for a new trial.  An

appropriate judgment accompanies this memorandum opinion.


                                    S/_____
                                      **CURTIS V. GÓMEZ**
                                         **Chief Judge**